UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

IN RE: STEPHEN TOWERS           CIVIL ACTION
       AND SANDRA TOWERS
                                NO. 07-4039

                                SECTION: "C"(4)


ORDER AND REASONS

Before the Court is the appeal of Stephen and Sandra Towers ("appellants") from the judgment of the United States Bankruptcy Court, Judge Magner, certain debts owed to Parish National Bank ("PNB") nondischargeable under 11 U.S.C. § 523(a)(2)(B) and 523(a)(2)(A). The appellants represent themselves *pro se* in this appeal. The Court has reviewed the bankruptcy court's order, the record, and the briefs, and finds that its judgment should be AFFIRMED.

**Facts and Procedural History**

This appeal arises out of a voluntary petition filed by the appellants under chapter 13 of the bankruptcy code, which was converted to a proceeding under chapter 7 on April 7, 2006. On August 29, 2006, PNB filed an objection to the dischargeability of the appellants' debt under 11

1

U.S.C. § 523(a)(2)(A), (a)(2)(B), (a)(4), and (a)(6).  Case No. 05-14156.

Finding no error with the bankruptcy court's findings of fact, this Court adopts those findings of fact (Opinion of J. Magner, April 20, 2007, at 1 - 8) ("Opinion") .  Those facts are briefly summarized as follows: Beginning in 2001, Towers Transportation, LLC ("Towers") (of which the appellants are member owners) obtained one or more loans from PNB, assigning to PNB as security for the debts the accounts receivable of Towers.  This was evidenced by a July, 27, 2001 security agreement, and perfected by the recordation of UCC-1 financing statement.  The debts due to PNB matured in May, 2004, and PNB advised Towers that it did not intend to renew the loans.  Towers was given ninety days to refinance the debt with another institution.  After Towers was unable to refinance the loan with another institution and Stephen Towers requested an extension, PNB requested a listing of all outstanding accounts receivable owed to Towers.  On September 20, 2004, Stephen Towers forwarded an itemization of the current outstanding accounts receivable ("Aging Report").  In reliance on this report, the loan was renewed, with several conditions to the extension of credit.  Opinion at 9.  These conditions included the collection of Towers' accounts receivable, already assigned to PND, through a lockbox account held at the bank and the notification of all of Towers' customers of this arrangement; that Towers would sign a new note, guaranteed by appellants, payable monthly with principal and interest; and that Towers would supply weekly accounts receivable aging reports.  *Id.*  The bankruptcy court found that PNB took reasonable steps, including the preparation of two letters to Towers' customers supporting Towers and explaining that the lockbox arrangement was merely a new business arrangement with Towers, to protect Towers'

reputation.  *Id.* at 10.

In its opinion of April 20, 2007, the bankruptcy court found that, from the forwarding of the Aging Report to PNB onward, the appellants and Towers actively deceived PNB in at least four ways, thus rendering the appellants' debt nondischargeable.[1]

The appellants, in their brief fashioned "Statement on Why Our Appeal Should be Granted," raise three general grounds for relief.  In their first claim, appellants argue that PNB had already granted the loan to appellants before the Aging Report was requested by PNB, that appellants had not updated the report because Ms. Towers had been out of the office due to personal problems, that there were significant receivables that had not been added to the Aging Report that would have made the report a wash to the receivables that were not removed, that PNB totally mishandled the lockbox account because they were not familiar with lockbox procedures, and that Towers did not receive any instructions on the lockbox procedures; and that

---

[1] "Debtors and Towers actively deceived PNB in at least four ways:
1. Debtors and Towers advised customers of Towers to pay Towers directly rather than PNB.  This was in direct contravention of Debtors and Towers' agreement to allow the collection of all accounts through a lockbox.  The deception was accomplished through letters sent directly to customers advising them that the assignment of receivables in favor of PNB was a mistake.  Debtors and Towers also mislead PNB into believing that they were cooperating with PNB's efforts to collect receivables when they forwarded a draft letter encouraging Towers' customers to remit payments to the lockbox account.  Although Debtors and Towers indicated that the letter would be sent to all customers, it was not.  This fact was not disclosed to PNB.
2. Debtors and Towers submitted a materially false written itemization of accounts receivable which they represented were owed to Towers.  The Aging Report contained numerous accounts that had been previously satisfied.  Debtors immediately knew the statement to be false and misleading but took no steps to correct the problem or notify PNB of any discrepancy.
3. Debtors diverted collections on Towers' accounts to a separate bank account out of the reach of PNB and without its knowledge.
4. Debtors diverted business and equipment of Towers to third parties through Load N Go.  While the proceeds of these endeavors were deposited into the account of Towers at CPB, by using Load N Go as the conduit for these business activities, Debtors masked the operations of Towers, removed accounts receivable from the security interests of PNB, and placed receipts beyond the immediate reach of PNB."

Opinion at 10.

it was because of PNB's negligence that Towers lost business.

In their second claim, the appellants argue that the negligence and mishandling of communications to customers, including their lack of a "clue as to the proper manner of handling an assignment of funds in the trucking industry," PNB's "inability to address the customers in a positive manner" and its letter, which "was not positive, but worded to sound as though [Towers was] in serious financial trouble," was the only reason that Towers failed.  Appellants also argue that PNB did not have a true assignment of funds on their original UCC-1 filing.

In their third claim, the appellants repeat that their bankruptcy is due to the negligence of PNB, and argue that they did not intend to deceive the bank.  Instead, they argue that at trial there was not a clear understanding by the bankruptcy court of why they took the actions that they did, which was simply because under the trucking procedures which they followed, PNB did not have a true assignment of funds.  If such a true assignment had existed, their customers would not have had an issue and would have sent all payments to the lockbox instead of to Towers.

### **Applicable Law and Analysis**

This Court reviews factual findings of the bankruptcy court for clear error, F.R.BANKR.P. 8013, and conclusions of law, and mixed conclusions of law and fact are reviewed *de novo*.  *In re Nation Gypsum Co.*, 208 F.3d 498, 504 (5th Cir. 2000).  A finding is clearly erroneous when, although there is evidence to support it, the reviewing court, on the entire record, is left with the definite and firm conviction that a mistake has been made.  *U.S. v. U.S.*

*Gypsum Co.*, 333 U.S. 364, 395 (1948).  The burden is on the appellant to demonstrate that the bankruptcy court's findings are clearly erroneous.  *In re Drehsen*, 190 B.R. 441,442 (M.D. Fla. 1995).

The issue before the bankruptcy court was whether the debtors actions and conduct in their effort to secure and retain financing with PNB, rendered their debt nondischargeable under 11 U.S.C. § 523(a)(2)(A), (a)(2)(B), (a)(4), or (a)(6).  The bankruptcy court concluded that various actions and failures to act by the appellants fell within (a)(2)(A) and (B), and thus did not find it necessary to address the other provisions.[2]

The bankruptcy court found that pursuant to section 523(a)(2)(B), the debtors had obtained a renewal and extension of credit from PNB through the use of a written statement, the Aging Report, that was materially false, respecting Towers' financial condition, upon which

---

[2] The relevant provisions read:

(a) A discharge under section 727, 1141, 1228(a), 1228(b) or 1328(b) of this title does not discharge an individual debtor from any debt--

    (2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by--

        (A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition;

        (B) use of a statement in writing--

            (i) that is materially false;

            (ii) respecting the debtor's or an insider's financial condition;

            (iii) on which the creditor to whom the debtor is liable for such money, property, services, or credit reasonably relied; and

            (iv) that the debtor caused to be made or published with intent to deceive;

PNB reasonably relied, and which was delivered with the intent to deceive. The appellants were immediately aware that the statement was false and materially misleading, yet took no steps to correct their representation despite ample time to do so. The court was presented with no evidence at trial to prove any additional accounts receivable were owed, beyond those reflected in the Aging Report, on September 20, 2004, when it was presented to PNB.[3] Although appellants argue that the report did not reflect other receivables, which would have offset those erroneously included in the report, they point to no evidence in the record to support this. In addition, they state that PNB had already granted the loan to Towers before the Aging Report was requested by PNB. However, the evidence in the record supports the bankruptcy court's finding that the report was forwarded on September 20, 2004, and that the note was signed over a month later.[4] The appellants point to no evidence that would suggest the bankruptcy court's finding that they had failed, despite the opportunity, to correct the report which they immediately knew to be false, was erroneous. The court properly found, based on the evidence, that the Aging Report effectively overstated the accounts receivable by almost $40,000 when it was delivered to PNB, that the appellants' immediately knew of and failed to apprise PNB of this overstatement, and that appellants were aware that PNB would not refinance or renew the loan if their receivables did not exceed the amount of the loan. As a result, the court reasonably found

---

[3] *See* Opinion at 12, n.36.

[4] *See* Opinion at 3, n.6. The note is dated October 26, 2004. A representative of PNB testified that it was signed at PNB on that date; the appellants testified it was signed the next day at Towers' office. Either way, the appellants had ample time between when they realized the report misrepresented the actual amounts due and when the note was signed, to correct the misrepresentation. The testimony that PNB relied upon the Aging Report in determining whether to renew or extend the loan was unrefuted at trial.

that the appellants' actions evidenced an intent to deceive.

In addition, the court properly found that the appellants ensuing behavior and actions, including the sending of letters to customers advising them not to send payment to the lockbox despite the agreement to do so, the representation that they would send to all customers a drafted letter encouraging them to remit payments to the lockbox, the diversion of collections on Towers' accounts to a separate bank account unknown to PNB, and its diversion of business and equipment to Load N Go, thus masking the operations of Towers, evidenced actions that rendered Towers' debts nondischargeable pursuant to section 523(a)(2)(A).  The appellants argue that they did not act with the intent to deceive PNB, and that there was not a clear understanding at trial of why they took the actions they did.  They further argue that PNB did not have a proper assignment of Towers' receivables, and were not required to direct such receivables to the lockbox.  This argument is misplaced, and fails to recognize the nature of the action under section 523.  The appellants represented to PNB that a certain amount of receivables was owed to Towers, which PNB relied on when agreeing to extend further credit to Towers.  The appellants agreed to certain conditions, including the use of the lockbox, and thereafter falsely represented that they were cooperating with PNB's collection efforts, while simultaneously diverting money to an account hidden from PNB.   Appellants fail to demonstrate that any of the bankruptcy court's findings were clearly erroneous, or that suggest its applications of the evidence to the appropriate standard under the statute was incorrect.

The appellants argue throughout that it is a result of PNB's negligence and mishandling of

the lockbox and assignment that caused their business to fail.  However, the bankruptcy court found that PNB took reasonable steps to protect Towers' business.  Appellants have not demonstrated that this finding is clearly erroneous, either.   In any event, this finding is not relevant to the elements before the bankruptcy court in its consideration of the dischargeability of Towers' debt under section 523(a)(2)(A) and (a)(2)(B).

**Conclusion**

The appellants have not demonstrated that any of the bankruptcy court's factual findings were clearly erroneous, or that it misapplied the relevant provisions of the Bankruptcy Code in finding the appellants' debt nondischargeable.  Accordingly, Court adopts the findings of the bankruptcy court, and its opinion and judgment are

AFFIRMED.

New Orleans, Louisiana, this 10th day of March, 2008.

HELEN G. BERRIGAN
UNITED STATES DISTRICT JUDGE